CHICAGO, R. I. & P. RY. CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 4320.

Circuit Court of Appeals, Seventh Circuit.
March 26, 1931.

W. F. Peter, of Chicago, Ill., M. L. Bell, of New York City, and W. F. Dickinson and A. B. Enoch, both of Chicago, Ill., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., John H. McEvers, Sewall Key, and J. P. Jackson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal involves petitioner's 1916, 1917, 1918, and 1919 income taxes and also its 1917 additional profits tax. The Board of Tax Appeals entered a single order upon petitioner's three copending petitions. Review of the Board's decision is therefore sought through a single petition to this court.

Numerous questions are presented. The facts bearing on each issue are free from controversy.

**Deductibility of Penalties.** Petitioner first attacked the ruling of the Board because of its disallowance of a deduction for penalties paid for violation of the Federal Safety-Appliance Law, the Hours of Service Law, the Transportation of Live Stock Law, the Quarantine Law, etc. Penalties paid during the years in question aggregated $23,053.68. Deduction of this amount was sought upon the authority of section 234(a), Revenue Act of 1918 (40 Stat. 1077), and section 12(a), Revenue Act of 1916 (39 Stat. 767) which authorized deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered," etc.

Petitioner argued that violations of the Safety-Appliance Act, etc., entail civil liability only (Chicago, B. & Q. Ry. Co. v. U. S., 220 U. S. 559, 578, 31 S. Ct. 612, 55 L. Ed. 582), and sums paid for their violations, constituted part of petitioner's ordinary and necessary expenses of operation of its business.

While the question is not free from doubt, we resolve it against petitioner upon the authority of Great Northern Ry. Co. v. Commissioner (C. C. A.) 40 F.(2d) 372; Burroughs Building Material Co. v. Commissioner (C. C. A.) 47 F.(2d) 178.

It would seem to require an unjustifiable, or at least a doubtful, stretching of the words "ordinary and necessary expenses" of a business to include therein judgments imposed as penalties for violations of public policy statutes. Moreover, following the words "ordinary and necessary expenses, * * *" there appears a more specific statement of items for which deductions may be allowed. The principle of statutory construction, of ejusdem generis, furnishes a basis for the holdings above cited.

**Deductions of Annual Amortization of Expenses Incurred in Selling its Bonds during Years 1904 to 1908.** During the years 1904 to 1908, petitioner sold $74,358,000 of its first and refunding mortgage bonds, which by their terms matured April 1, 1934. The expenses of such sale aggregated $256,686.08, which amount was charged to profit and loss on the date of sale. Petitioner claimed a prorated expense deduction for the years 1916 to 1919, inclusive, for the cost of selling said bonds.

Respondent argued that such prorating of the cost of selling the bonds did not fall within the language of the statute, which allowed "ordinary and necessary expenses paid or in-

curred during the taxable year." Petitioner, on the other hand, contended that the expense was analogous to discount in the sale of bonds, and should be amortized over the life of the bond.

It was held in Commissioner v. Old Colony R. R. (C. C. A.) 26 F. (2d) 408, 410, that premiums on bonds sold prior to March 1, 1913, could not be prorated over the life of the bond issue so as to be subject to the later enacted income tax laws. For a like reason, it would seem that expenses incurred and charged off prior to March 1, 1913, should not be allowed as deductions from income in subsequent years. Moreover, the statute allowing the deduction of expenses limited such expenses to those "paid or incurred during the taxable year."

**■** *Taxability of Overcharges Resulting from Errors in Computation of Passenger Fares.* Petitioner collected from passengers sums in excess of the fares provided by its tariffs. These overcharges were the result of errors in computation by station agents, and consisted of many items of small amounts. The amounts thus collected were held by petitioner in a "suspense account" and credited to profit and loss at the end of the year.

Petitioner contended that the overcharges did not constitute taxable income because they were not gain derived from capital or labor or both. A practical mind (and problems of taxation are eminently practical, Tyler v. U. S., 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758) would have some difficulty in accepting the conclusion that passengers' overpayments, received and retained by petitioner, were not income derived from its business. It is true petitioner was not legally entitled to charge passengers more than its published tariff rates, but the payments were made through mistake, and the names of the passengers, who made the overpayments, were unknown. It could hardly be 'said, in view of the mutual mistake, that the transactions were illegal. Even though tainted with illegality, such income would, nevertheless, be taxable. U. S. v. Sullivan, 274 U. S. 259, 47 S. Ct. 607, 71 L. Ed. 1037, 51 A. L. R. 1020.

Viewing the transaction again as a practical matter, we conclude that the overpayments were part of the income for the year during which they were credited to profit and loss.

In case petitioner were required to refund any of such overcharges to a passenger, who identified the transaction, we have no doubt that such refund would be a proper deduction for the year in which it was made.

**■** *Checks and Vouchers Never Presented for Payment.* Petitioner issued checks and vouchers for compensation for services and in payment of loss or damage claims, etc., which were never presented for payment, in the following sums: 1916, $26,070.72; 1917, $16,305.93; 1918, $19,091.53; 1919, $24,473.93. If such checks and vouchers were not presented for payment within two years from the date of their issuance, petitioner charged them to profit and loss.

On the same theory that governed the disposition of the preceding item, we think the Commissioner properly charged these items as income for the year petitioner charged them to profit and loss. In case petitioner were subsequently required to pay any of these sums, it would be entitled to a deduction for the amount thus paid in the year it was paid.

**■** *Deduction of Unamortized Discount on Debenture Bonds Retired in 1917.* On January 15, 1912, petitioner sold $20,000,000 of its debenture bonds, maturing in 20 years, at a discount of $1,200,000. It amortized a prorated portion of this discount in each of the years 1912 to 1916, inclusive. On July 2, 1917, it exchanged for those debentures its 6 per cent. preferred stock of the same par value. At this date, the unamortized discount of the debentures amounted to $871,921.26. Petitioner's claim for allowance of this unamortized discount as a loss for 1917 was disallowed by the Board upon the ground that the exchange of the bonds for the preferred stock was purely a capital transaction, which did not result in a deductible loss.

Had petitioner paid off its bonds in cash at par, a loss would have occurred. Instead of paying off these bonds in cash, however, petitioner issued its stock to retire them. The stock was not worth par any more than the bonds were worth par. Petitioner's bonds were a liability. So was its capital stock. It exchanged one liability for the other. Presumably they were of the same value. This presumption, arising from the fact of even exchange, is strengthened by the adjudication of the Commissioner, approved as it was by the Board of Tax Appeals.

Petitioner's contention that it suffered a loss is necessarily predicated upon the assumption that the preferred stock and the bonds were, at the time of the transaction, both worth par. The assumption is erroneous in its fact basis. While there is a dearth of evidence showing the market value of the

bonds and the stock at the time of their exchange, it does appear that not long before such date a $1,000 bond was worth approximately $580.

If petitioner's contention were carried to its logical conclusion, a profit rather than a loss would appear from this transaction. For if a bond, which petitioner sold at 98, was retired at 58, a gain or profit would result. And, if $20,000,000 of bonds brought petitioner $18,800,000, and they were retired by petitioner's giving property worth $11,600,000 for them, a substantial gain would have resulted. But such method of determining gain or loss is illogical. The proper way is to assume that both the bonds and the stock were liabilities of petitioner; that the stock was issued for the bonds; that the value of each was the same at the time of the exchange. It therefore follows that out of the exchange, there was neither profit nor loss.

■ *Interest on Bonds Received by Reorganization Committee.* The protective and reorganization committee came into possession of a large amount of money realized from an assessment levied upon the holders of stock. The money was deposited in a New York bank, and interest at the rate of 2 per cent. was paid thereon. $68,583.27 was thus received by the committee. This sum respondent included in petitioner's taxable income. Petitioner objected, and we think rightly so.

No reason is advanced why this sum should be added to petitioner's income save that the protective committee was working for petitioner's benefit and the success of the committee's efforts inured to it.

The fact that stockholders of a company are interested in, and help, the corporation does not make the activities of the stockholders' committee the activities of the corporation. Petitioner would hardly admit the existence of a liability on its part for the debt or liabilities of the committee. Likewise, income secured through the committee's activities is not income of the petitioner.

We have examined the other contentions of petitioner, and conclude that they may be rejected without elaboration of our views.

The order of the Board of Tax Appeals is reversed, with directions to deduct the sum of $68,583.27 (being the interest collected by the protective committee on funds by it deposited) from petitioner's taxable income for the year or years it was included by the Board of Tax Appeals, and, when thus deducted, to again compute the tax.