RUFUS S. COLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 96589.    Promulgated October 30, 1940.

*Benjamin P. DeWitt, Esq.*, and *Sidney Pepper, Esq.*, for the petitioner.

*Allen T. Akin, Esq.*, for the respondent.

OPINION.

HARRON: The sole question is whether the cancellation of petitioner's indebtedness to Hupp resulted in taxable income under section 22 (a) of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin.[1]

Respondent determined that the entire amount of the indebtedness canceled was taxable income under section 22 (a). In his brief petitioner contends that, since he was insolvent immediately prior to the cancellation of the indebtedness, the cancellation did not result in taxable income, and relies on *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95, and *Burnet* v. *Campbell Co.*, 50 Fed. (2d) 488.

In our opinion the Board's decision in *Lakeland Grocery Co.*, 36 B. T. A. 289, is controlling here. In the *Lakeland* case the taxpayer was insolvent immediately prior to the cancellation of his indebtedness by his creditors but solvent immediately after the cancellation, with an excess of total assets over total liabilities. After considering, *inter alia*, the same cases relied on by petitioner in his brief here, the Board held that the cancellation of the indebtedness resulted in taxable income to the extent of the excess of total assets over total liabilities immediately after the cancellation. The Board stated in part as follows:

\* \* \* The petitioner's net assets were increased from zero to $39,596.93 as a result of the cancellation of indebtedness by its creditors, and to that extent it had assets which ceased to be offset by any liability. The decisions that the increase in clear assets so brought about constitutes taxable "gain" or "income" (*United States* v. *Kirby Lumber Co.*, *supra*, and *Helvering* v. *American Chicle Co.*, 291 U. S. 426) are applicable to the facts of the instant case, as the cancellation of the petitioner's debts had the effect of making its assets greater than they were before that transaction occurred. It is true that "gain" or "profit" is essential to the existence of taxable "income" (cf. *Dallas Transfer & Terminal Warehouse Co.*, *supra*), and we believe that "gain", as commonly understood, was realized here when the petitioner, who was hopelessly insolvent, received by the action of its creditors an increment to its assets clear and free of any claims of the creditors.

The rule of the *Lakeland* case is applicable here in so far as the cancellation of the indebtedness by Hupp released petitioner's assets which were subject to claims of creditors. The evidence shows that certain assets of petitioner, aggregating $10,043.95, were released from claims of Hupp, a creditor, and thereafter petitioner's net assets free

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

from liabilities were in the amount of $4,517.57. Such increase in clear assets, resulting from the cancellation of petitioner's indebtedness constitutes taxable "gain" or "income" to petitioner. *Lakeland Grocery Co., supra.*

In determining the amount in which petitioner's net assets were increased as a result of the cancellation of petitioner's indebtedness by his creditor, i. e., the amount of petitioner's assets which ceased to be offset by claims of creditors, there should be, and has been, omitted from the value of petitioner's assets the value of his equity in ten life insurance policies. Under the applicable law of New York, which was in effect prior to the date of petitioner's original note to Hupp and at the time of the cancellation of the note, such equity in insurance was free from claims of creditors. See section 55 (a) of the Insurance Law of New York.[2] In determining whether or not petitioner was solvent or insolvent after cancellation of the debt his exempt property should not be considered. *Underleak* v. *Scott,* 117 Minn. 136; 134 N. W. 731. Section 55 (a) of the New York Insurance Law has been held to include within its exemption the cash surrender value of insurance policies, notwithstanding that the insured reserved the right to change the beneficiary. See *In re Messinger,* 29 Fed. (2d) 158, where section 55 (a) was held to allow "exemption" from assets of a bankrupt insured of insurance similar to that involved here, where the claims of creditors arose after March 31, 1927, the effective date of section 55 (a). Accordingly, the value of petitioner's assets was $10,043.95 on January 30, 1935, exclusive of the value of his equity in the insurance policies.

Petitioner does not contend directly that the cancellation resulted in a gift, but he does contend that the agreement between Hupp and petitioner, relating to petitioner's employment by Hupp as general sales manager and to other matters, dated August 23, 1934, was invalid and that his indebtedness to Hupp was not canceled in consideration of the cancellation of the agreement of August 23, 1934. We deem it unnecessary to consider these express contentions, because the evidence

---

[2] SEC. 55 (a). *Rights of creditors and beneficiaries under policies of life insurance.*—If a policy of insurance whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person; Provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors with specification of the amount claimed. [L 1927 C 468 Eff. Mar. 31, 1927.]

clearly shows that the cancellation of petitioner's indebtedness to Hupp was for a consideration, and, thus, did not result in a gift to petitioner. As was pointed out by the Board in *Reginald Denny*, 33 B. T. A. 738, 742, "It is elementary that if there is a consideration for a transfer it is not a gift. *Noel* v. *Parrott*, 15 Fed. (2d) 669." In this case, as in the *Denny* case, there was a consideration which removed the transaction from the category of a gift. It consisted of petitioner's agreement to resign as a director of Hupp. Hupp was extremely desirous of terminating petitioner's entire participation in Hupp's management, as well as his employment. As stated by petitioner in his brief, "as director, he [petitioner] had steadfastly opposed policies" of the individual then in control of Hupp, and "had embarrassed and incurred the enmity" of that individual, "not only by opposing his policies at meetings of the board of directors of the corporation but also by sending on December 11, 1934, a letter to the Securities and Exchange Commission and an identical letter to the New York Stock Exchange informing those bodies of acts * * * which petitioner believed improper."

It is held that the cancellation of petitioner's indebtedness to Hupp resulted in taxable income in the amount of $4,517.57. *Lakeland Grocery Co., supra.*

*Decision will be entered under Rule 50.*