FIDELITY-PHILADELPHIA TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43719. Filed December 27, 1954.

*Alfred J. McDowell, Esq.*, and *John Anthony Day, Esq.*, for the petitioner.
*George H. Bowers, Jr., Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency of $3,593.74 in income tax for the year 1948. The question for decision is whether $6,780.64 in unclaimed and dormant deposits in the tax-

payer bank represented income when in 1948 it transferred that amount from its deposit liability account to surplus. The facts have been stipulated, and the stipulation is incorporated herein by reference as our findings.

The taxpayer, National Bank of Olney at Philadelphia,[1] was incorporated as a national bank in 1934, when it acquired various assets and assumed certain liabilities of a liquidated national bank bearing a similar name, The National Bank of Olney in Philadelphia, which we shall refer to as the predecessor bank. Among such liabilities were certain depositors' accounts of the predecessor bank.

During 1948 the taxpayer, after fruitless attempts to locate certain depositors by mail, advertising, and otherwise, transferred to its Undivided Profits or Surplus Account certain of the above depositors' accounts which were unclaimed, dormant, and inactive in the amount of $6,780.64, and thereupon closed out its unclaimed deposit accounts in that amount. It did not include that amount as income in its 1948 return, but it is stipulated that it was shown as "a Sundry Credit to Earned Surplus." The Commissioner treated this amount as additional income in his determination of deficiency.

During the taxable year 1948 and the years prior thereto taxpayer's books, records, and papers were not examined by any officer or agent of the Commonwealth of Pennsylvania, nor did the taxpayer at any time during that same period ever report to the Commonwealth the names and last known addresses of the depositors, or persons entitled to the unclaimed moneys or dividends together with the amounts and nature thereof.

*First.* We consider at the outset the general question whether unclaimed deposits may constitute income to a bank. The problem does not come to us without persuasive precedent. *Boston Consol. Gas Co.* v. *Commissioner*, 128 F. 2d 473 (C. A. 1), affirming 44 B. T. A. 793, involved unclaimed deposits which had been made by former gas company customers as well as unclaimed refunds due to certain customers. It was held that these items represented income to the company when they were transferred to surplus on its books. The Court of Appeals said (128 F. 2d at p. 475):

It seems to us, therefore, looking at the question from a practical point of view as we are admonished to do [citing cases], that the petitioner in setting up its books on December 31, 1935, must have taken the practical view and elected at that time to treat as income both unclaimed deposits and unclaimed overpayments by users of quarter meters.

---

[1] The petition herein was filed by the taxpayer, National Bank of Olney at Philadelphia. However, prior to the hearing, the taxpayer was merged into the Fidelity-Philadelphia Trust Company, and the caption has been changed accordingly. The merger has no bearing on the issues involved.

The decision in the *Boston Consol. Gas Co.* case itself found support in a variety of earlier cases. Thus, in *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988, affirmed on this issue, 47 F. 2d 990 (C. A. 7), certiorari denied, 284 U. S. 618, it was held that overcharges received from railroad passengers, as a result of errors in making change, where the passengers could not be identified or located, constituted taxable income. Again, in *Charleston & W. C. Ry. Co.* v. *Burnet*, 50 F. 2d 342 (C. A., D. C. Cir.), affirming 17 B. T. A. 569, an employer which in 1924 had credited to profit and loss unclaimed wages earned by employees prior to 1922 was held to have realized taxable income in 1924, notwithstanding that it held itself ready to make payment to employees presenting proper claims. The Court of Appeals noted that (50 F. 2d at p. 343) "the effect of the bookkeeping was to make available for general uses the particular moneys impressed in 1921 with the particular obligations *  *  *." See also *Atlantic Coast Line Railroad Co.*, 23 B. T. A. 888; *Nehi Beverage Co.*, 16 T. C. 1114 (amount transferred from deposit liability account to miscellaneous income account with respect to deposits received from customers on containers used in the taxpayer's business); *Wichita Coca Cola Bottling Co.* v. *United States*, 152 F. 2d 6 (C. A. 5), certiorari denied, 327 U. S. 806 (transfer to surplus of account with respect to deposits on cases and bottles); *Fort Pitt Brewing Co.*, 20 T. C. 1, affirmed, 210 F. 2d 6 (C. A. 3), certiorari denied, 347 U. S. 989 (portion of reserve for returnable containers treated as income even in absence of bookkeeping entry transferring item to surplus or any similar account).

Petitioner argues that book entries do not determine income. It is indeed true that book entries are not conclusive; on the one hand, they cannot convert into income that which is not in fact income, nor, on the other hand, can their absence prevent the treatment of a particular item as income which is in fact income. Cf. *Helvering* v. *Midland Ins. Co.*, 300 U. S. 216, 223; *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Northwestern States Portland Cement Co.* v. *Huston*, 126 F. 2d 196, 199 (C. A. 8); *Commissioner* v. *North Jersey T. Ins. Co.*, 79 F. 2d 492, 493 (C. A. 3). But the book entries in the instant case are not without significance. They mark the point of time when it is reasonable to conclude as a practical matter, on the basis of the present record, that the unclaimed deposits will not in fact be paid over to the depositors,[2] and they represent an assertion of dominion over such

---

[2] When the case was submitted to the Court on stipulation, inquiry was made of petitioner's counsel as to whether petitioner challenges the year 1948 as the time when the item in question is to be accounted for by petitioner, assuming that it is income in some year, and he answered unequivocally that 1948 would not be an inappropriate year. The following colloquy occurred between the Court and petitioner's counsel (Mr. McDowell):

MR. McDOWELL: Well, I think that I might say this, Your Honor, that if I under-

deposits by the bank, which has undertaken to deal with them as its own funds. In some of the cases cited above, involving unclaimed deposits or similar situations, the making of book entries was undoubtedly an element that was considered in reaching the results therein. See *Boston Consol. Gas Co.* v. *Commissioner, supra; Charleston & W. C. Ry. Co.* v. *Burnet, supra; Atlantic Coast Line Railroad, supra.* In *Wichita Coca Cola Bottling Co.* v. *United States,* 152 F. 2d 6 (C. A. 5), certiorari denied, 327 U. S. 806, dealing with an account representing deposits for cases and bottles the Court of Appeals stated (p. 8):

If the balance was an aggregate of old deposits, the book entry closing them out and putting the money to free surplus funds was not mere bookkeeping, but a financial act, *as though a bank could and did transfer to its surplus old deposit accounts as barred or abandoned.* Such a financial act creates income in the year in which it is done. Compare Maryland Casualty Co. v. United States, 251 U. S. 342, 352, 40 S. Ct. 155, 64 L. Ed. 297; Boston Consol. Gas Co. v. Commissioner, 1 Cir., 128 F. 2d 473; Commissioner v. Dallas Title & Guar. Co., 5 Cir., 119 F. 2d 211. [Italics supplied.]

And in the comparable situation presented in *Fort Pitt Brewing Co., supra,* a like result was reached even in the absence of book entries transferring the item in question to surplus or another similar account.

Petitioner argues that under Pennsylvania law the statute of limitations does not begin to run against depositors until there has been a demand for payment followed by a refusal, that the bank was accordingly still liable in full to the depositors in 1948, and that there is therefore no basis for including the unclaimed accounts in the taxpayer's income for 1948. We may assume that petitioner correctly states the Pennsylvania law and that the bank was still liable to its depositors in 1948. But the conclusion that it presses upon us does not follow. The important consideration is that it was unlikely as a matter of fact that the bank would have to honor its obligation to the depositors in question. To be sure, if in later years a depositor should make claim and be paid, a corresponding deduction would then be available to the bank. Meanwhile, however, it must be treated as having realized income with respect to the accounts over which it has thus asserted its control. This very situation was considered in several of the cases noted above. In the *Boston Consol. Gas Co.* case, the Court of Appeals agreed with the conclusion that "deposits

stand your question, I don't believe that the Petitioner would contend that 1948 was any more inappropriate than any other year. It is our position that——

THE COURT: It is not income at all?

MR. McDOWELL: It is not income at all.

THE COURT: But if it is income, you do not challenge 1948 as the year that is to be accounted for?

MR. McDOWELL: No, we do not, Your Honor.

returned and overpayments refunded under such circumstances may be deducted from income in the year in which such return or refund is made .* * *." 128 F. 2d at p. 475. Similarly, in *Charleston & W. C. Ry. Co.* v. *Burnet*, 50 F. 2d at p. 343, the court in dealing with unclaimed wages that were included in the employer's gross income stated: "Of course, if any part of those wages due should be claimed and paid at any subsequent time, deduction to that extent could thereafter properly be made."

The possibility that the taxpayer might have to make a payment to a depositor in a later year may give it a right to a deduction in such year. But it does not prevent the inclusion of the unclaimed deposits in gross income in the earlier year, when such future payment appears improbable.

*Second.* Petitioner argues that the unclaimed deposits cannot be treated as income to the bank by reason of the escheat laws of Pennsylvania. It relies upon the Act of June 7, 1915, P. L. 878, as amended, 27 Purdon's Pennsylvania Statutes, sec. 282, and the Act of May 16, 1919, P. L. 177, as amended, 27 Purdon's Pennsylvania Statutes, sec. 431. Its position is that under either of the cited provisions unclaimed deposits in the hands of national banks are subject to the Pennsylvania escheat laws and that therefore the bank can have no such claim of right to the deposits as would justify their inclusion in gross income. We do not agree with petitioner's conclusion.

The escheat provisions are not self-executing. They contemplate proceedings to be initiated by the auditor general and the attorney general. Many instances of escheatable property may never come to the attention of the auditor general or the attorney general, and in this very case the record shows that the books of the bank were not examined by any Pennsylvania official during 1948 or prior thereto, and that the bank did not report to the Commonwealth the relevant data with respect to the unclaimed accounts. The record does not show that escheat proceedings of any kind have ever been started with respect to those deposits, and for aught we know, none may ever be brought. Meanwhile, the bank has asserted dominion over those deposits and has proceeded to deal with them as its own. The mere fact that it may, at some later time, be required to turn over such deposits to the Commonwealth does not prevent them from being income to the bank in 1948. Its claim to those deposits in 1948 was certainly no weaker than the claim of the extortionist to the moneys obtained from his victim in *Rutkin* v. *United States*, 343 U. S. 130. It is not correct to say as does petitioner, that the bank had no "claim of right" to the deposits. Indeed, it did have a claim, and asserted it in a most

telling manner by transferring the accounts to surplus.  Petitioner's insistent reliance upon *Commissioner* v. *Wilcox*, 327 U. S. 404, while remaining strangely silent about the *Rutkin* decision, is difficult to understand in view of the plain scope of the holding in the *Rutkin* case and the statement in the opinion that the *Wilcox* case was being limited to its facts (343 U. S. at p. 138)—facts which are certainly quite different from those in the instant case.

If escheat proceedings should be initiated in some later year, petitioner may then be in a position to claim a deduction for funds surrendered.  Cf. *United States* v. *Lewis*, 340 U. S. 590, 591.  But it cannot meanwhile avoid its obligation to account for these unclaimed deposits as income in 1948.  Cf. *United States* v. *Lewis, supra; North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Briggs* v. *United States*, 214 F. 2d 699 (C. A. 4) ; *Commissioner* v. *Alamitos Land Co.*, 112 F. 2d 648 (C. A. 9), certiorari denied, 311 U. S. 679; *Saunders* v. *Commissioner*, 101 F. 2d 407 (C. A. 10) ; *D. H. Byrd*, 32 B. T. A. 568.[3]

*Third.*  Petitioner contends finally that any gain otherwise attributable to the unclaimed deposits cannot be regarded as income but must rather be treated merely as a reduction in purchase price of the assets which the taxpayer acquired from its predecessor bank.  It relies upon *Hirsch* v. *Commissioner*, 115 F. 2d 656 (C. A. 7) ; *Helvering* v. *A. L. Killian Co.*, 128 F. 2d 433 (C. A. 8) ; *Gehring Publishing Co.*, 1 T. C. 345; *Providence Coal Mining Co.* v. *Glenn*, 88 F. Supp. 975 (W. D., Ky.).  We think that the argument is without merit.

It has been the general rule for a number of years that the discharge of indebtedness may constitute income to the debtor.  This principle was firmly established in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, where a debtor reacquired its own obligations at a discount.  However, it was made clear thereafter that the same rule applied where the taxpayer had purchased all the assets of another corporation assuming all the liabilities of the predecessor.  In *Helvering* v. *American Chicle Co.*, 291 U. S. 426, the successor corporation in such circumstances, which thereafter purchased outstanding bonds of its predecessor at less than par, was held to have realized income.  The Supreme Court deemed it irrelevant whether the obligation involved was initially one of the taxpayer or one assumed by it in taking over the business of its predecessor.

---

[3] In view of the conclusion we reach it becomes unnecessary to consider whether or to what extent the Pennsylvania escheat laws may constitutionally be applied to unclaimed deposits in national banks.  Cf. *First Nat'l Bank* v. *California*, 262 U. S. 366 ; *National City Bank* v. *Philippine Islands*, 302 U. S. 651 ; *Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233 ; *Roth* v. *Delano*, 338 U. S. 226 ; *In re Certain Moneys*, 359 Pa. 363, 59 A. 2d 154.

Had there been no transfer of the predecessor's business to the taxpayer bank in the present case, there can be no doubt, to the extent of this issue, that the unclaimed deposits would represent income to the original bank. And the fact that the taxpayer stepped into the shoes of the predecessor cannot change the result here any more than it did in the *American Chicle Co.* case.

In the *Hirsch, Killian Co.*, and *Gehring Publishing Co.* cases, *supra*, relied upon by petitioner, the indebtedness in question related to specific property purchased, the fair market value of which had declined below the balance due, and in each case the creditor agreed to accept a reduced amount in full settlement. The asset in each case had been sold at a specific price, and the debt was merely the unpaid balance of that price. The reduction in each case was the result of a bilateral arrangement on the part of debtor and creditor; and the creditor involved was the party which had sold the property in respect of which the reduction in purchase price was held to have occurred. The particular circumstances in each of those cases was thought to warrant the conclusion that the cancellation of indebtedness in question was merely in fact a reduction of the purchase price. In other circumstances, such as those present in *Commissioner* v. *Coastwise Transportation Corp.*, 71 F. 2d 104 (C. A. 1), it was held that the reduction in indebtedness represented by notes was not intended as a downward revision of a purchase price notwithstanding that the notes had been issued originally in connection with the purchase of certain vessels. And in *Commissioner* v. *Jacobson*, 336 U. S. 28, dealing with the reacquisition of bonds at favorable prices by a debtor, the Court, after noting that they were not purchase money bonds, pointed out that (p. 39) : "The respective sellers of the bonds bore no relation to the respondent [taxpayer-obligor] other than that of creditors."

We hold that in the circumstances of the present case there was not in fact a reduction of purchase price, and that the gain attributable to the unclaimed deposits cannot escape tax on that theory.

Petitioner's reliance upon *Providence Coal Mining Co.* v. *Glenn*, 88 F. Supp. 975 (W. D., Ky.), is not persuasive. No opinion appears to have been rendered in that case and the "conclusions of law" refer to no authorities in support of the result reached. We do not know what factors the court relied upon or whether it ever took into account the considerations discussed above. In the circumstances we cannot accept that case as authoritative here.

*Decision will be entered for the respondent.*