*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARTIN ALPERT and CAROLYN ALPERT,
     *Plaintiffs-Appellants,*

  *v.*

UNITED STATES OF AMERICA,
     *Defendant-Appellee.*

No. 06-3415

>

Appeal from the United States District Court
for the Northern District of Ohio.
No. 04-00383—Solomon Oliver, Jr., District Judge.

Argued: January 23, 2007

Decided and Filed: March 23, 2007

Before: SILER, GIBBONS, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** J. Scott Broome, ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER, Cleveland, Ohio, for Appellants. Curtis C. Pett, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Scott Broome, J. Timothy Bender, ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER, Cleveland, Ohio, for Appellants. Richard Farber, Randolph L. Hutter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

  JULIA SMITH GIBBONS, Circuit Judge. Appellants Martin and Carolyn Alpert appeal the district court's grant of summary judgment to appellee United States because the Alperts failed to present evidence of an essential element of their claim for refund of overpaid taxes. The Alperts argue that they have presented sufficient evidence to create a disputed issue of material fact as to when the debts of their wholly-owned subchapter S corporation were discharged in bankruptcy. For the reasons stated below, we affirm the decision of the district court.

I.

  During the years at issue, the Alperts were a married couple who held 100% of the stock in Cumulus, Inc., a corporation that had elected to be taxed under subchapter S of the Internal Revenue Code. A subchapter S corporation is not subject to income tax, but the income of the corporation

passes through to the shareholders, who report that income on a pro-rata basis on their individual tax returns and pay tax on that income. *Friedman v. Comm'r*, 216 F.3d 537, 538 n.2 (6th Cir. 2000) (citing 26 U.S.C. § 1366). Cumulus became insolvent in 1992, and as a result, incurred a loss of over $7.5 million for that year. At that time, the Alperts' basis in their Cumulus shares was approximately $3.4 million. Because a shareholder's ability to take advantage of an S corporation's losses is limited to the shareholder's basis in the corporation, 26 U.S.C. § 1366(d)(1), the Alperts could deduct only $3.4 million of the losses, and the remaining $4.2 million was "suspended" for deduction in future years to the extent that there was an increase in the Alperts' basis. *See* 26 U.S.C. § 1366(d)(2) (1997).

Prior to 1992, Cumulus had borrowed significant sums of money from Star Bank National Association ("Star Bank") for use in its business operations, and that loan was secured by substantially all of the assets of Cumulus. Cumulus defaulted on the repayment of $4.7 million of the Star Bank debt, and in December 1992, Star Bank succeeded in bringing an action for the appointment of a receiver to dispose of the assets of Cumulus for satisfaction of the indebtedness. On January 8, 1993, an involuntary petition under the Bankruptcy Code was filed against Cumulus, and a trustee was appointed to administer the estate. By July 1994, the receiver had collected less than $2.9 million from all inventory, receivables, and other assets of Cumulus and collected no further sums. During 1994, the trustee completed the filing of all preference or other recovery claims and collected approximately $433,000. In early 1995, the trustee collected a little over $25,000 in pending preference claims and submitted his final report on June 2, 1995. On March 25, 1996, the trustee filed his "Zero Bank Statement and Final Account," and the Bankruptcy Court entered its final decree and closed the case. Over $31 million in unsecured debt of Cumulus was never repaid by the actions of either the receiver or the trustee. Among the unsecured creditors were Microsoft Corporation and CCA Advertising, which were owed approximately $7.6 million and $46,000 respectively.

On April 8, 2000, the Alperts filed a Form 1040X (Amended U.S. Individual Income Tax Return) for 1991, showing an overpayment of $389,827 and seeking refund of that amount. The Alperts claimed that as a result of the discharge of debt by the creditors of Cumulus, they were entitled to increase their basis in their stock by the amount of the discharge of indebtedness, deduct suspended losses for 1992, and carry back remaining losses of $2,580,698 to 1991, resulting in their having overpaid their taxes for 1991 in the amount of $389,827. The IRS denied the Alperts' claim for refund, and the Alperts timely filed an action seeking a tax refund for 1991 before the district court.

The parties agree that discharge of debt by the creditors of Cumulus results in income to Cumulus, *see* 26 U.S.C. § 61(a)(12), and that under the statute in effect during the years at issue, the Alperts could use this income to increase their basis in Cumulus, *see Gitlitz v. Comm'r*, 531 U.S. 206, 218 (2001). This increase in basis would allow the Alperts to utilize the suspended deductions for Cumulus's losses in 1992 in the year that the increase in basis occurred. *See* 26 U.S.C. § 1366(d)(2) (1997). Furthermore, under the statute in effect during the years at issue, if the amount of an S corporation's losses that passes through to a shareholder in a particular year exceeds the shareholder's income for that year, the remaining loss may be carried back to the three preceding taxable years. 26 U.S.C. § 172(b)(1)(A) (1997).

The only issue in dispute before the district court was the year in which the discharge of debt by the creditors of Cumulus occurred. The Alperts alleged that Cumulus received discharge of indebtedness income in either 1992, 1993, or 1994, allowing them to carry back the suspended losses to 1991. To support this claim the Alperts submitted to the district court an affidavit of Martin Alpert that stated:

14.  Over $31 million in unsecured debt of Cumulus was never repaid, and by the end of 1994, after the assets of Cumulus had been disposed of, it was clear that this debt would not be repaid by Cumulus.

. . .

16.  According to information received from the accounting departments of Microsoft and CCA Advertising, both companies had written off the debt of Cumulus in the years 1992, 1993 and 1994.

17.  To the best of my knowledge and belief, many of the other unsecured creditors had also written off the Cumulus debt as uncollectible in 1994, 1993 or 1992.

The government argued that the discharge of debt was realized when the bankruptcy was concluded in 1996, placing the 1991 tax year outside the three year range for carrying back the losses.  The district court concluded that the Alperts had failed to make a showing sufficient to establish the discharge of debt prior to 1996 and granted summary judgment to the government.

## II.

Whether the district court correctly granted summary judgment is a matter reviewed *de novo* by this court.  *May v. Franklin County Comm'rs*, 437 F.3d 579, 583 (6th Cir. 2006).  "The district court, and this Court in its review of the district court, must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered." *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co., Inc.*, 395 F.3d 338, 341-42 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Here, the Alperts have failed to present evidence sufficient to establish the discharge of debt of Cumulus in 1992, 1993, or 1994, which is necessary for them to prevail in their claim for a refund of taxes paid for 1991.

Both parties agree that the controlling law setting forth the test to be applied in determining whether or not a debt has been discharged is *Friedman v. Comm'r*, 216 F.3d 537 (6th Cir. 2000).

First and foremost, in order for [cancellation of debt] income to occur under section 61(a)(12), the taxpayer must have been discharged from a liability.  Such liability, or debt, must be viewed as having been discharged when it becomes clear that the debt will never have to be paid.  The test for determining such a moment is a practical assessment of the facts and circumstances relating to the likelihood of payment.  Any "identifiable event" which fixes the loss with certainty may be taken into consideration . . . .  While the cases cited above do rely on the importance of, among all the facts and circumstances of the particular case, the improbability that a debt will actually have to be paid, these cases also stand for the proposition that there must also be some identifiable event which fixes the loss with certainty.

*Id.* at 546, 547-48 (citations omitted).  The Alperts urge the court to consider the Ninth Circuit's analysis in *Milenbach v. Comm'r*, 318 F.3d 924 (9th Cir. 2003).  *Milenbach* states that "[r]epayment of the loan need not become absolutely impossible before a debt is considered discharged."  318 F.3d at 936.  This statement suggests that which was only implicitly assumed in *Friedman*, that

cancellation of debt income can occur even if the creditor retains a legal right to demand payment and there is a remote possibility of repayment. *See Friedman*, 216 F.3d at 547 (discussing extensively *Fidelity-Philadelphia Trust Co. v. Comm'r*, 23 T.C. 527 (1954), in which the court found discharge of debt despite the fact that the debtor was "still liable in full" and "the probability of having to make payments to the [creditors] in the future was slim"). However, while the court considers the improbability that a debt will be repaid, the court requires "there *must* also be some identifiable event which fixes the loss with certainty." *Id*. at 547-48 (emphasis added).

Three of the items of evidence that the Alperts argue create a disputed issue of material fact as to whether an identifiable event occurred indicating that Cumulus's debt would not be repaid are not "identifiable events." First, the Alperts argue that the filing of the receiver's report, which stated that he had collected $2.9 million from the disposition of all of the assets of Cumulus, constitutes an identifiable event because, when combined with the fact that there was more than $26 million in unsecured debt, it was clear that those unsecured creditors would not be paid. While the filing of the report is undoubtedly an event in the most literal sense, it is not an event that is relevant to the discharge of debt. The filing of the report had no impact on the amount of debt owed by Cumulus or the likelihood of its repayment. The Alperts undoubtedly focus on this irrelevant event because otherwise their argument is completely indistinguishable from the one considered and rejected in *Friedman*. In *Friedman*, the debts of the bankrupt company also greatly exceeded the total value of its assets, and the government even stipulated that the debts in excess of the assets would never be repaid. *Id.* at 544. The court held that even assuming that "it was unlikely that payment towards [the company's] outstanding debt was possible," discharge of debt had not occurred because "the record [wa]s devoid of any identifying event." *Id*. at 548. Just as the government's stipulation in *Friedman* was not an identifiable event, neither is the filing of the receiver's report in this case.

The Alperts also argue that the substantial completion of Cumulus's bankruptcy proceedings and the absence of collection activity by Cumulus's creditors constitute identifiable events. While the actual completion of the bankruptcy proceedings would certainly constitute an identifiable event, the Alperts acknowledge by their characterization of the proceedings as "substantially complete" that this event has not taken place. No event identifies the proceedings as "substantially" complete; the proceedings are either complete or they are not. Similarly, the absence of collection activity is, by its own terms, not an event.

The final item of evidence that the Alperts contend indicates a discharge of debt is Martin Alpert's affidavit stating that Microsoft, CCA Advertising, and other unsecured creditors had written off the Cumulus debt as uncollectible in 1992, 1993, or 1994. While this claim is not without some precedent, *see Fidelity-Philadelphia Trust Co.*, 23 T.C. at 529-30 (noting that while book entries are not conclusive, they can constitute a "financial act" resulting in discharge of debt), the court need not consider this argument because the statements made in Martin Alpert's affidavit are not admissible evidence. Although the nonmoving party is not required to "produce evidence in a form that would be admissible at trial," *Celotex*, 477 U.S. at 324, an affidavit offered in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997). Martin Alpert's statement regarding the writing off of debts by Microsoft and CCA Advertising was apparently based solely upon information that he received from elsewhere and is thus inadmissible hearsay. His statement regarding the writing off of debts by other companies was based upon his "belief" and did not demonstrate the personal knowledge required by Fed. R. Civ. P. 56(e). Therefore, the Alperts have failed to present any admissible evidence that debts of Cumulus were discharged in 1992, 1993, or 1994, and the government was entitled to summary judgment.

## III.

For the foregoing reasons, we affirm the decision of the district court.