COD income for the 1992 taxable year.  Accordingly, we **AFFIRM** the judgment of the Tax Court.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0195P (6th Cir.)
File Name:  00a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MICHAEL FRIEDMAN, et al.,
    *Petitioners-Appellants,*

        *v.*                                  No. 98-2378

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellee.*

On Appeal from the United States Tax Court.
Nos. 96-18735, 96-18736.

Argued:  December 17, 1999

Decided and Filed:  June 8, 2000

Before:  BOGGS and NORRIS, Circuit Judges; NUGENT,
District Judge.

---

*The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

## COUNSEL

**ARGUED:** Joseph P. Alexander, ROETZEL & ANDRESS, Cleveland, Ohio, for Appellants. Teresa E. McLaughlin, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Joseph P. Alexander, J. Timothy Bender, ROETZEL & ANDRESS, Cleveland, Ohio, for Appellants. Teresa E. McLaughlin, Ann Belanger Durney, Paula K. Speck, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

_____

## OPINION
_____

NUGENT, District Judge. The Commissioner of Internal Revenue (hereinafter "Commissioner") issued notices of tax deficiencies to Michael and Madeline Friedman and Edward and Deborah Rosenthal[1] (hereinafter "Taxpayers") for the years 1989 and 1990. The notices stated that Taxpayers were not entitled to a loss in the amount of $5,055,116. As shareholders of an S corporation, Taxpayers made claims for net operating losses of their S corporation, New Manchester, by using the corporation's 1992 discharge of indebtedness income (a.k.a. "COD income") to increase their stock basis, and then in turn, using the increased basis to claim net operating losses from prior years. The Commissioner denied Taxpayers' claims for net operating loss deductions, determining that COD income of an insolvent S corporation cannot be used to increase the shareholders' basis.

_____

[1]Appellants' counsel filed notice with the Court that Michael Friedman passed away recently; however, counsel stated that Mr. Friedman's death would not affect the continuation of this matter.

evidence shows that the bankruptcy trustee was actively administering New Manchester's estate well into 1995, collecting and disbursing monies. Moreover, some of New Manchester's creditors were, in fact, actively pursuing payment owed them as evidenced by the fraudulent conveyance claim filed in December, 1992.

In view of all the circumstances, this Court finds that no identifying event occurred in 1992 to fix the date of discharge of indebtedness in that year. The absence of anything in the record, including the stipulation of the facts by both Commissioner and Taxpayers, even suggesting an identifiable event in 1992, satisfies Commissioner's burden in that regard. Accordingly, the Tax Court did not commit clear error in finding that a discharge of indebtedness did not occur during the 1992 taxable year.

## IV.  Stock Basis of Shareholders in S Corporation

Taxpayers also contend that the income from the discharge of indebtedness passes through to them as shareholders of New Manchester, an S corporation. As a result, Taxpayers contend, the basis of their stock in New Manchester increases. Because the Court found herein that Taxpayers did not realize a discharge of indebtedness, or COD income, in 1992, there is no need to address the pass-through issue at this time. Should Taxpayers, however, wish to claim the COD income for a different year, they can refer to *Gaudiano v. Commissioner*, No. 99-1294, in which this Court decided the issue concerning a shareholder's COD income and his stock basis, for guidance.

### Conclusion

In sum, the Court finds that the Tax Court did not commit clear error in holding that New Manchester did not realize

_____

demonstrate that the debts were, in fact, discharged. *Cozzi*, 88 T.C. at 445. In this case, there was no such event. This Court agrees with the Tax Court's disposition in that regard.

couple of years. Such activity included collecting accounts receivable, seeking buyers for saleable assets, and filing periodic reports with the bankruptcy court concerning assets, receipts, and disbursements. In fact, in addition to a report filed in August of 1992, the trustee filed reports with the court in January, 1993, and January, 1995. Moreover, the trustee filed his Final Report on November 30, 1995. The report included a "Cash Receipts and Disbursement Record" which identified numerous transactions in New Manchester's bank accounts throughout 1994 and 1995. The trustee filed a Supplemental Final Report in 1996.

Further evidence that a discharge had not occurred in 1992 is the fraudulent conveyance claim filed in December, 1992, by several of New Manchester's creditors for $11 million. The trustee obtained independent counsel to investigate the claim in September, 1993. While Taxpayers initially offered $300,000 in February of 1994, to settle the creditors' claim, this offer was refused by the bankruptcy court. The claim was eventually settled on or about April 11, 1995, for $2.2 million. These facts demonstrate that not only was the fraudulent conveyance claim still pending after 1992, but the value of the claim was in dispute well into 1995. Thus, because the value of the claim was uncertain in 1992, the actual amount New Manchester's estate would realize from the claim was not ascertainable in that year. Therefore, the total debt that would be discharged could not have been discerned in 1992.

In light of the above, regardless of how improbable it was that all of, or any of, New Manchester's outstanding liabilities would be paid, the fact remains that no identifying event occurred from which this Court can determine the debt was discharged.[8] *See Cozzi*, 88 T.C. at 445. On the contrary, the

---

[8]Taxpayers also argue that by virtue of New Manchester's insolvency, as effectively stipulated by the parties, there was a *de facto* discharge, pursuant to 26 U.S.C. §108(a)(1)(B). While it may be true that because of New Manchester's insolvency its liabilities would unlikely be paid, the result is the same. There must be some identifiable event to

---

Taxpayers petitioned the United States Tax Court for redetermination of the tax deficiencies. The Tax Court upheld the deficiencies, holding that there was no discharge of indebtedness income during the relevant tax year, and thus, New Manchester did not realize COD income for the 1992 taxable year. Further, the Tax Court held that even if the S corporation had realized COD income for 1992, such income does not increase the basis of the shareholders.

Taxpayers filed this timely appeal. For the reasons that follow, we AFFIRM the decision of the Tax Court.

## Factual and Procedural Background

Appellants Michael Friedman and Edward Rosenthal were shareholders in an S corporation known as Manchester Steel, Inc.[2] (a.k.a. New Manchester). Madeline Friedman and Deborah Rosenthal, spouses of Michael Friedman and Edward Rosenthal, respectively, were not shareholders of New Manchester; however, they are parties in this case solely by virtue of having filed joint tax returns with their husbands.[3]

New Manchester is a steel service company which processes and distributes flat rolled steel and other related products. It was incorporated on April 17, 1990, and it had elected to be taxed as an S corporation under Subchapter S of the Internal Revenue Code. Mr. Friedman and Mr. Rosenthal each owned 97.5 shares of New Manchester. Their individual

---

[2]A Subchapter S corporation is a small corporation that has elected, under the Internal Revenue Code ("IRC"), to be taxed similarly to partnerships. When a corporation has elected to be taxed under Subchapter S, the corporation itself is not subject to income tax. Rather, the income tax is imposed directly on the shareholders on a pro rata basis. In other words, the corporation's income "passes through" to the shareholders, who then report that income on their individual tax returns. *See* 26 U.S.C. §1366.

[3]Hereafter, "Taxpayers" shall refer to Michael Friedman and Edward Rosenthal.

percentage stock ownership was 24.375%. The remaining shareholders, Vernon Bremberg and Irwin Kramer, each owned 102.5 shares. Their percentage of stock ownership was collectively 51.250%.

On or about April 17, 1990, New Manchester acquired portions of the assets of Manchester Consolidated Industries, Inc. (a.k.a. Old Manchester), including cash, accounts receivable, equipment, inventory, land, buildings, improvements, fixtures, goodwill, trade name, and the trade mark from Old Manchester. New Manchester also assumed $12.8 million of Old Manchester's liabilities, including a secured trade debt. New Manchester financed such acquisition using the assets purchased from Old Manchester as security. When New Manchester purchased these assets, Old Manchester amended its Articles of Incorporation and changed its name to E&M Investments Co.

New Manchester was not a successful corporation. It suffered significant operating losses due to a variety of factors. In 1991 and in 1992, New Manchester claimed over $10 million in losses from its trade or business activities. In addition, New Manchester had a number of creditors to whom it owed in excess of $30 million. As a result of the continuing losses, on March 3, 1992, an involuntary petition for bankruptcy was filed on behalf of New Manchester pursuant to Chapter 7 of the United States Bankruptcy Code. A trustee in bankruptcy, who was authorized to operate New Manchester's business, was appointed on March 30, 1992. The trustee engaged in a number of activities on behalf of New Manchester, including the following: collecting accounts receivable, seeking buyers for saleable assets, paying claims, and filing reports with the bankruptcy court.

On May 7, 1992, New Manchester filed a schedule of assets and liabilities and a statement of financial affairs with the bankruptcy court. The schedule stated that New Manchester possessed tangible assets--real and personal property--valued at $9,241,153 and intangible assets--trade name, customer lists, and covenant not to compete--valued at $3,991,457.

therefore, the project (and the loan) was deemed abandoned. *Cozzi*, 88 T.C. at 445-447.

While the cases cited above do rely on the importance of, among all the facts and circumstances of the particular case, the improbability that a debt will actually have to be paid, these cases also stand for the proposition that there must also be some identifiable event which fixes the loss with certainty. *See Cozzi,* 88 T.C. at 445. The Tax Court considered the likelihood of payment on the debts in the above cases cited by Taxpayers; however, as Commissioner correctly notes, both cases also contain some identifiable event from which the Tax Court determined that a discharge of debt had occurred. In contrast to *Cozzi* and *Fidelity-Philadelphia Trust Co.*, there is no identifiable event in the instant matter from which this Court can determine that a loss was fixed with certainty, or that a discharge of debt occurred.

As previously stated herein, Taxpayers contend that the stipulated facts in this case demonstrate that as of December, 1992, future payment of New Manchester's prepetition indebtedness in excess of $19 million was impossible, and the indebtedness would never be paid. Assuming for the moment that it was unlikely that payment towards New Manchester's outstanding debt was possible, the record is devoid of any identifying event that established a discharge of the indebtedness.[7]

The record demonstrates that not only was the bankruptcy proceeding still pending as of December 31, 1992, the bankruptcy trustee was actively conducting New Manchester's business at that time and well into the next

---

[7]Without considering the requirement of an identifiable event, the Court notes first, as a technical matter, that according to the United States Bankruptcy Code, a "discharge" may not be granted in a chapter 7 proceeding to a corporation. 11 U.S.C. §727(a)(1). Section 727(a)(1) states that "[t]he court shall grant the debtor a discharge, unless...the debtor is not an individual." 11 U.S.C. §727(a)(1). Therefore, New Manchester, as a corporate debtor, cannot obtain a "discharge" under the chapter 7 petition it filed with the Bankruptcy Court on March 3, 1992.

While the taxpayer bank maintained that it received no income in the year at issue because the bank was still liable in full to the depositors, the Tax Court held that in exercising control over the accounts, the bank realized income with respect to those accounts. The court determined that the act of a book entry closing out the accounts with old deposits and placing the money in a surplus account created income in the year in which it was done. *Fidelity-Philadelphia Trust Co.*, 23 T.C. at 530. In reaching its conclusion, the court considered the fact that the bank would most likely not have to honor its obligations to the depositors in question, and the probability of having to make payments to the depositors in the future was slim enough that the income could be determined to be in the year of the book entry. *Id.*

Taxpayers, in the present case, contend that both *Cozzi* and *Fidelity-Philadelphia Trust Co.* endorse the proposition that the improbability of future payment is the triggering event for determining the occurrence of a discharge of indebtedness. Taxpayers Br. at 19. As such, because it was clear as of December 31, 1992 that New Manchester's debt of over $19 million would never be repaid, as stipulated by the parties, such debt must be viewed as having been discharged in that year.

Taxpayers, however, are only partly correct. In *Fidelity-Philadelphia Trust Co.*, the Tax Court considered the improbability of the bank ever having to honor the obligation of its depositors in holding that the bank realized income the year it closed the accounts at issue. *Fidelity-Philadelphia Trust Co.*, 23 T.C. at 530. The court reasoned that the possibility that the taxpayer might have to make a payment to a depositor in a later year may give it a right to a deduction in such year; however, "it does not prevent the inclusion of the unclaimed deposits in gross income in the earlier year, when such future payment appears improbable." *Id.* at 531. Similarly, much later in *Cozzi,* the court contemplated the likelihood of payment in holding that it was not likely that a future payment on the loan agreement would be made;

The schedule also reported liabilities totaling $30,360,669. On July 2, 1992, the trustee's report of sale of New Manchester's tangible assets was filed.

Several of New Manchester's creditors commenced a proceeding in Bankruptcy Court, on December 10, 1992, alleging potential fraudulent conveyances and/or preferential transfers with respect to New Manchester prior to the filing of the petition for bankruptcy. The creditors claimed that such fraudulent conveyances or preferential transfers rendered New Manchester insolvent or undercapitalized. The creditors sought $11 million from Taxpayers and E&M Investments. The bankruptcy court granted the trustee's request to obtain independent counsel to investigate and prosecute such claim in September, 1993. In February, 1994, Taxpayers offered to settle the creditors' claim for $300,000. The offer, however, upon a motion by the trustee, was refused by the court. Eventually, upon a second motion by the trustee, on April 11, 1995, the trustee was authorized to settle the claim for $2.2 million.

Throughout the bankruptcy proceeding, the trustee filed periodic reports with the court concerning assets, receipts, and disbursements. Such reports were filed in August of 1992, January of 1993, and January of 1995. On November 30, 1995, the trustee filed a final report with the bankruptcy court. The Final Report stated, in part, as follows:

> All property of the estate, except that claimed as exempt by the debtor, without objection, or determined by the [bankruptcy] Court as exempt, has been inventoried, collected and liquidated, or abandoned. Any property not heretofore abandoned by the trustee is now abandoned...All claims have been examined and objections have been resolved....

Trustee's Final Report, November 30, 1995. A Supplemental Final Report was filed on January 31, 1996. Subsequently, the bankruptcy court issued its final decree on July 15, 1996, thus closing New Manchester's Chapter 7 proceeding and discharging the trustee.

During the pendency of the bankruptcy proceeding, Taxpayers filed joint federal income tax returns with the Internal Revenue Service for the calendar years of 1989, 1990, and 1992. On October 15, 1993, the Friedmans filed an application for a tentative refund, Form 1045, Application for Tentative Refund. The refunds were claimed for 1989 and 1990 in the amounts of $765,440 and $792,469, respectively. In such application, the Friedmans claimed net operating loss deductions from carrybacks relating to Mr. Friedman's stock interest in New Manchester.

On November 12, 1993, the Rosenthals filed a Form 1045, Application for Tentative Refund. The tentative refunds were claimed for 1989 and 1990 in the amounts of $834,729 and $810,331, respectively. The Rosenthals also claimed net operating loss deductions in its application from carrybacks relating to Mr. Rosenthal's stock interest in New Manchester. The Rosenthals filed an amended tax return for the 1988 tax year, claiming a carryback of a net operating loss for the years 1988 to 1991.

In its federal income tax return for 1991, Form 1120S, New Manchester claimed a loss of $10,102,289. In its tax return for 1992, New Manchester claimed a loss of $10,751,953.

The Commissioner issued notices of deficiencies to Taxpayers for the calendar years 1989 and 1990, on May 29, 1996. The Commissioner stated that Taxpayers owed additional amounts as follows: The Friedmans owed $686,400 for 1989 and $793,860 for 1990; and the Rosenthals owed $617,446 for 1989 and $811,723 for 1990. The notices of deficiencies stated that, for the taxable year ending 1992, Taxpayers were not entitled to a loss in excess of $5 million each from their interest in New Manchester. The Commissioner found that Taxpayers were not entitled to increase their basis in New Manchester by the cancellation of indebtedness income. Thus, Taxpayers' 1992 taxable income was increased accordingly.

Subsequently, Taxpayers filed separate petitions with the United States Tax Court, on August 27, 1996, for a

In finding that Hap recognized a discharge of indebtedness in 1980, the *Cozzi* Court looked for an identifiable event to demonstrate the abandonment of security for a debt that would, in turn, show a release from debt and corresponding COD income. In viewing all of the circumstances surrounding the various agreements, the court concluded that Sargon had no intention of enforcing its rights against Hap under the loan agreement, and the scheduled final payment by Hap to Sargon in 1980, under the loan agreement, "was an 'identifiable event' sufficient to evidence Hap's abandonment of the picture." *Cozzi*, 88 T.C. at 447. With no payment made by Hap to Sargon and no arrangement by the parties to defer such payment, "[t]he final payment under [the loan agreement] was an important event, and the failure to make such payment is clear evidence of abandonment." *Id.* In so holding, the court noted that the failure to make the final payment was not the only identifiable event, but it was a reasonable choice. *Id.* Thus, Hap realized a discharge of indebtedness in the taxable year 1980.

Taxpayers also cite *Fidelity-Philadelphia Trust Co. v. Commissioner*, 23 T.C. 527 (1954) in support of their argument that New Manchester realized a discharge of indebtedness in 1992. In *Fidelity-Philadelphia Trust Co.*, the taxpayer was incorporated as a national bank in 1934. At that time, it acquired various assets and assumed certain liabilities of a liquidated national bank. Among such liabilities were certain depositors' accounts of the liquidated bank.

In 1948, after fruitless searches to locate depositors by mail, advertising, and other means, the taxpayer bank transferred to its surplus account several of the depositors' accounts which were unclaimed, dormant, and inactive. In doing so, the bank closed out its unclaimed deposit accounts. On its tax return for 1948, the monies resulting from the closing of the above accounts was shown as "a Sundry Credit to Earned Surplus," not as income. In assessing a tax deficiency, Commissioner treated this amount as additional income.

'identifiable event' which fixes the loss with certainty may be taken into consideration." *Cozzi*, 88 T.C. at 445 (citing *United States v. S.S. White Dental Mfg. Co.*, 274 U.S. 398 (1927)).

Taxpayers rely on *Cozzi v. Commissioner*, *supra*, in support of their position that in December, 1992, it was clear that part of New Manchester's indebtedness, in the amount of $19,471,684, would never be repaid. *Cozzi* involved a limited partnership, Hap Production Company ("Hap"), formed for the purpose of producing motion picture films. Hap entered into an agreement with Map Films, Ltd. to produce a film for Map Films in return for annual payments from 1976 through 1981. Another party, Barongreen agreed to produce the film for Hap in exchange for certain annual payments from 1976 through 1979 to Hap on behalf of Map Films. Hap entered into a nonrecourse loan agreement with Sargon Establishment whereby Hap agreed to repay such loan in annual payments between 1976 and 1980.

The film produced by the parties never made a profit. Consequently, none of the annual payments by Map Films, Barongreen, or Hap was ever made. Hap's tax returns for 1976 through 1980 reported no activity. In 1984, the parties entered into settlement agreements whereby each party was released from any contractual obligations, and Sargon received the rights to the film. As a result of the cancellation of its nonrecourse debt to Sargon, Hap reported income for 1984. Petitioner, a limited partner in Hap, reported his distributive share of such income on his tax return for 1984.

The Commissioner issued a tax deficiency, stating that the petitioners received income from Hap in 1980 as a result of Hap recognizing income in that year. As stated by Commissioner, a possible explanation for Hap's recognition of income in 1980 was the fact that Hap's nonrecourse loan from Sargon was discharged. As in the present case, the dispute in *Cozzi* is not whether a discharge of indebtedness occurred, rather it is in which year such income is recognizable.

redetermination of their respective income tax deficiencies for the taxable years at issue. In each case, Taxpayers claimed entitlement to the 1992 loss and carried the loss back to their respective tax years of 1989 and 1990. The two petitions were consolidated for the purpose of briefing and opinion in the Tax Court.

On May 27, 1998, the Tax Court issued its opinion, upholding Taxpayers' tax deficiencies. In its opinion, the Tax Court stated that the principal issue before it was whether Taxpayers were entitled to increase their basis in the S corporation's stock as a result of any COD income realized by the corporation. Initially, however, the Court found that pursuant to the plain language of section 108(d)(2) of the Internal Revenue Code, New Manchester had not realized a discharge of indebtedness, or COD income, in 1992. The Court observed that the trustee in New Manchester's bankruptcy case was actively conducting New Manchester's business and disbursing monies to creditors after 1992. The Court noted, in particular, that New Manchester's creditors filed a fraudulent conveyance claim in December of 1992; the claim was not settled until 1995. Further, the Court noted that the trustee's final report, which concluded that all claims pertaining to New Manchester had been settled, was filed in 1995.

The Tax Court, therefore, held that the facts and circumstances as outlined above do not even suggest that New Manchester's underlying indebtedness was extinguished or discharged by the bankruptcy court in 1992. In addition, the Court was not persuaded that New Manchester's insolvency, in and of itself, in 1992, was sufficient to create a *de facto* discharge, as argued by Taxpayers. Finally, the Tax Court held that even if New Manchester had realized COD income in 1992, such income would not have increased Taxpayers' basis in the corporate stock because section 108(d)(7)(A) of the Internal Revenue Code prevents a pass-through to shareholders of COD income which is excluded from an S corporation's gross income.

Taxpayers' appeal follows the decision of the Tax Court.

## Discussion

The primary issue in this case is whether Taxpayers are entitled to an increase in their basis in an S corporation's stock as a result of the discharge of indebtedness income, or COD income, realized by the corporation. As a threshold matter, however, we must determine whether New Manchester actually realized COD income in 1992, which would, in turn, establish whether Taxpayers may claim, and carry back, a loss in excess of $5 million each.

## I. Standard of Review

This Court reviews the Tax Court's findings of fact for clear error and its application of law *de novo*. *Ekman v. Commissioner*, 184 F.3d 522, 524 (6th Cir.1999). Regarding the specific question of the timing of the discharge of indebtedness, however, Taxpayers present two possible standards of review.

In the main body of their brief, Taxpayers state that the time of the discharge is essentially a question of fact which would be subject to review for clear error. Taxpayers Br. at 18 (citing *Carl T. Miller Trust v. Commissioner*, 76 T.C. 191, 195 (1981)("Determination of the point in time at which a taxpayer's obligation has been cancelled, giving rise to income, is essentially a question of fact."); Taxpayers Br. at 24 (concluding that the Tax Court's finding "that no discharge occurred in 1992" is clearly erroneous). However, in the section of their brief entitled "Standard of Review," Taxpayers suggest that "whether sufficient evidence has been submitted to meet a party's burden is a mixed question of law and fact." Taxpayers Br. at 38. Taxpayers appear to reach this conclusion by combining two prior assertions: (1) that the sufficiency of evidence submitted by a party is a question of

## §108. Income from discharge of indebtedness

### (a) Exclusion from gross income.

   **(1) In general**. Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if
      **(A)** the discharge occurs in a title 11 case;
      **(B)** the discharge occurs when the taxpayer is insolvent;
      **(C)** the indebtedness discharged is qualified farm indebtedness; or
      **(D)** in the case of a taxpayer other than a C corporation, the indebtedness discharged is qualified real property business indebtedness.

26 U.S.C. §108(a)(1). In the instant matter, the relevant exception is "the discharge occurs in a title 11 case," as Taxpayers filed a petition for bankruptcy on March 3, 1992. Section 108(d)(2) defines a "title 11 case" as "a case under title 11 of the United States Bankruptcy Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the discharge is granted by the court or is pursuant to a plan approved by the court." 26 U.S.C. §108(d)(2).

First and foremost, in order for COD income to occur under section 61(a)(12), the taxpayer must have been discharged from a liability. Such liability, or debt, must be viewed as having been discharged when it becomes clear that the debt will never have to be paid. *Cozzi v. Commissioner*, 88 T.C. 435, 445 (1987). The test for determining such a moment is a practical assessment of the facts and circumstances relating to the likelihood of payment. *Cozzi*, 88 T.C. at 445 (citing *Brountas v. Commissioner*, 74 T.C. 1062, 1074 (1980), supp. opinion to 73 T.C. 491 (1979), vacated and remanded on other grounds, 692 F.2d 152 (1st Cir.1982), aff'd in part and rev'd in part on other grounds sub nom. *CRC Corp. v. Commissioner*, 693 F.2d 281 (3d Cir.1982)). "Any

fact that the creditors initially sought $11 million upon the filing of the claim.[6]

The Tax Court agreed with Commissioner in that some sort of identifying event or forgiveness on the part of the creditors was necessary in order to give rise to a discharge of indebtedness income in 1992. Accordingly, the Court held that the evidence supported the conclusion that New Manchester did not realize COD income in the year at issue since no identifiable event occurred.

"Gross income" is defined in the Internal Revenue Code as "all income from whatever source derived...." 26 U.S.C. §61(a). It includes income from discharge of indebtedness, or cancellation of indebtedness (COD income). 26 U.S.C. §61(a)(12). This means that a taxpayer who has incurred a financial obligation, which obligation is later discharged or the taxpayer is released from the indebtedness, has realized an accession to income. 26 U.S.C. §61(a)(12); *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931). The rationale of this principle is that the discharge of a debt below the face value of the debt accords the debtor an economic benefit equivalent to income. *Id.*

Accompanying the discharge of indebtedness income rule, however, is what is commonly referred to as the "insolvency exception." Section 108(a)(1) of the Internal Revenue Code provides that a debtor will not recognize income under §61(a)(12) if he or she is insolvent following the discharge of indebtedness. 26 U.S.C. §108(a)(1). Section 108(a) provides, in pertinent part, as follows:

---

[6]Perhaps Commissioner could have stipulated that "it was clear that prepetition indebtedness in excess of the value" of specific assets and the fraudulent conveyance claim would never be repaid, in order to address the indebtedness without committing to an assertion that over $19 million would clearly never be repaid.

fact that will not be disturbed unless clearly erroneous[4]; and (2) that the allocation of the burden of proof is a question of law.

In support of this latter proposition, that the allocation of the burden of proof is a question of law and whether sufficient evidence has been submitted is a mixed question of law and fact, Taxpayers cite two old cases from other circuits, without specific page references: (1) *Kendrick Coal & Dock Co. v. Commissioner,* 29 F.2d 559 (8th Cir.1928); and (2) *Commissioner v. Cecil B. DeMille Productions, Inc.*, 90 F.2d 12 (9th Cir.1937). In *Kendrick*, the most relevant language states that "[w]hether a particular finding of fact is supported by any substantial evidence is a question of law." 29 F.2d at 563. The second case cited contains no language that would be beneficial to Taxpayers' position.

Commissioner does little to respond to Taxpayers' propositions concerning the appropriate standard of review with respect to the timing of the discharge. Commissioner states only that Taxpayers "acknowledge" that the timing of realization of discharge of indebtedness "is a question of fact, subject to the clearly erroneous standard of review." Commissioner Br. at 18.

Contrary to Taxpayers' second contention regarding the standard of review, this Court finds that the Tax Court's decision regarding the timing of the discharge should be reviewed for clear error. This circuit recently referred to a determination of whether taxpayers failed to carry their burden of proving that they engaged in activities within the meaning of a statute as a "factual conclusion." *See Holmes v. Commissioner*, 184 F.3d 536, 543 (6th Cir.1999). Such reference indicates that this circuit views the issue of a whether a party presented evidence sufficient to meet its burden of proof as a question of fact, subject to review for

---

[4]Taxpayers cite *Hoover v. Commissioner*, 102 F.3d 842 (6th Cir.1996), which supports only the portion of the assertion that a question of fact is reviewed for clear error. *See Hoover*, 102 F.3d at 844.

clear error. *See also In re Newman*, 7 F.3d 234 (Table), 1993 WL 328035, **2 (6th Cir.1993)(unpublished opinion)("The question of whether a particular set of facts satisfies (or fails to satisfy) the requisite burden of proof is an inseparable part of the factfinding process and as such is reviewed -- together with the facts -- for clear error.")(citing 1 Steven A. Childress & Martha S. Davis, Federal Standards of Review §2, 18, at 2-130 (2d ed. 1991)).

## II.  Burden of Proof

Taxpayers maintain that Commissioner bears the burden of proof with respect to the timing of the discharge of indebtedness. Tax Rule 142(a) states as follows:

> The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent.[5]

Based on this Rule, Taxpayers contend that the question of whether the discharge of indebtedness occurred in 1992, as opposed to another year, is a "new matter." Taxpayers argue, therefore, that Commissioner bears the burden of proof. Without resolving this issue, the Tax Court merely concluded that if the burden were shifted to Commissioner, "he would have fulfilled that requirement by a substantial preponderance of the evidence." J.A. at 43.

The Notices of Deficiency issued to Taxpayers stated as follows:

> IT IS DETERMINED THAT FOR THE TAXABLE YEAR ENDING 1992, YOU ARE NOT ENTITLED TO

---

[5] The burden of proof does not change when a case is fully stipulated, as is presently the case before this Court. See Tax Rule 122(b); *Zarin v. Commissioner*, 92 T.C. 1084, 1088 (1989), *remanded on other grounds*, 916 F.2d 110 (3d Cir.1990).

these assets would never be repaid." J.A. at 64. Thus, Taxpayers contend that since it was stipulated that indebtedness in excess of the value of New Manchester's assets as of December 31, 1992 would never be repaid, there was, effectively, a discharge in the amount of $19,471,684 in 1992.

Commissioner, on the other hand, maintains that there was no discharge because there was no identifying event in 1992 demonstrating that a debt had been discharged. In support of his position, Commissioner emphasizes two points: First, the stipulated record demonstrates that the bankruptcy trustee was actively administering the bankruptcy estate well into 1995, collecting accounts receivable, seeking buyers for saleable assets, and filing reports with the bankruptcy court. Second, a claim for fraudulent conveyance in the amount of $11 million was initiated by several of New Manchester's creditors. While at one point Taxpayers offered to settle the claim for $300,000, it was eventually settled in 1995 for $2.2 million. Based upon the fluctuation in anticipated value, initial offer, and actual settlement, Commissioner contends that the value of the fraudulent conveyance claim was highly uncertain. Therefore, for all of these reasons, Commissioner maintains that no event had occurred in 1992 to fix a discharge of indebtedness, nor could there have been any certainty at that time as to the amount of any discharge.

The Court must note, however, that Commissioner does not explicitly reconcile the discrepancy between the stipulated statement that the fraudulent conveyance claim had an anticipated value of $2,400,000 as of December 31, 1992, and Commissioner's argument in his brief that the claim's value could not be fixed in 1992. Implicitly, the argument appears to be that the *anticipated* value could not be expected to reflect the *actual* value of the claim, especially in light of the

disallowing the loss claimed by Taxpayers is new grounds for disallowance; it does not clarify or develop an original determination by Commissioner. The new grounds requires the introduction of different evidence. As such, as justice and fairness require, the burden of proving that the discharge did not occur in the year at issue is on Commissioner.

## III. Discharge of Indebtedness Income

The Notice of Deficiency issued to Taxpayers states that Taxpayers are not entitled to a loss in the amount of $5,055,116.00 from New Manchester and they are not entitled to increase their basis in the corporation by the cancellation of indebtedness income. In order to resolve this issue, the Court must determine, initially, whether New Manchester realized a discharge of indebtedness income, or COD income, for the taxable year ending 1992.

Taxpayers argue that there was a discharge of indebtedness in 1992 because it was clear at the end of 1992 that $19,471,684 of New Manchester's indebtedness would never be repaid. Taxpayers reached this determination as follows: When the bankruptcy proceeding began, New Manchester had liabilities of $30,360,669 and assets of $9,241,153. By December 31, 1992, as the parties have stipulated, the value of New Manchester's assets was $1,488,985.78, in addition to a fraudulent conveyance claim filed by New Manchester's creditors. The claim had an anticipated value of $2,400,000. Because New Manchester had paid $7 million to one of its creditors in 1992, Taxpayers assert that New Manchester's remaining liabilities, as of December 31, 1992, totaled $23,360,669 (the initial liabilities of $30,360,669 minus $7,000,000). Taxpayers thereby determined that the excess of New Manchester's liabilities over the fair market value of its assets was $19,471,684 ($23,360,669 (liabilities) minus $1,488,985.78 (assets) minus $2,400,000 (anticipated value of the fraudulent conveyance claim)). Moreover, Taxpayers point to the stipulation of the parties whereby Taxpayers and Commissioner stated that "[a]s of December 31, 1992, it was clear that prepetition indebtedness in excess of the value of

A LOSS IN THE AMOUNT OF $5,055,116.00 FROM THE SMALL BUSINESS CORPORATION KNOWN AS MANCHESTER STEEL, INC. YOU ARE NOT ENTITLED TO INCREASE YOUR BASIS IN THE CORPORATION BY THE CANCELLATION OF INDEBTEDNESS INCOME. INTERNAL REVENUE CODE SECTION 108(d)(7) PROVIDES THAT THE EXCLUSION FOR CANCELLATION OF INDEBTEDNESS INCOME WILL APPLY AT THE ENTITY LEVEL IN THE CASE OF CANCELLATION OF AN S CORPORATION'S DEBT. CONSEQUENTLY, IF THE CANCELLATION OF DEBT IS EXCLUDED AT THE CORPORATE LEVEL, THERE IS NO INCOME ITEM TO FLOW THROUGH TO THE SHAREHOLDERS AND NO INCREASE IN YOUR STOCK BASIS. ACCORDINGLY, YOUR 1992 TAXABLE INCOME IS INCREASED $5,055,116.00.

IN ADDITION, THIS AMOUNT EXCLUDED FROM INCOME, UNDER SECTION 108 OF THE INTERNAL REVENUE CODE, IS TAX-DEFERRED INCOME, NOT TAX-EXEMPT. ACCORDINGLY, THERE IS NO INCREASE TO YOUR STOCK BASIS UNDER SECTION 1366 OF THE INTERNAL REVENUE CODE. THEREFORE, SINCE YOU HAD A $0.00 BASIS IN THIS STOCK, YOU ARE NOT ENTITLED TO THE CURRENT YEAR AND/OR SUSPENDED YEAR LOSSES CLAIMED.

IN ADDITION, YOU WOULD NOT BE ELIGIBLE FOR THE LOSS IN THE AMOUNT OF $5,055,116.00 ON YOUR 1992 RETURN SINCE YOU WERE NOT AT RISK FOR THESE LOSSES WITHIN THE MEANING OF SECTION 465 OF THE INTERNAL REVENUE CODE.

J.A. at 19 (Friedman Notice); J.A. at 33 (Rosenthal Notice). According to Taxpayers, the Notice presupposes the fact of the discharge of indebtedness, and it fails to raise a question as to the timing of the discharge; hence, it is a "new matter"

pursuant to Tax Rule 142(a). Commissioner, on the other hand, contends that the Notice clearly made Taxpayers aware that Commissioner denied that New Manchester had incurred discharge of indebtedness income in 1992, and it was sufficiently broad to cover both the timing and the occurrence of such income.

As previously stated, petitioners (Taxpayers) generally bear the burden of proof. Tax Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). The respondent (Commissioner), however, bears the burden as to "any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer." Tax Rule 142(a). The issue, therefore, becomes whether the timing of the discharge of indebtedness is a "new matter."

A new position taken by Commissioner is not necessarily a "new matter" if it merely clarifies or develops Commissioner's original determination without requiring the presentation of different evidence, being inconsistent with Commissioner's original determination, or increasing the amount of the deficiency. *Achiro v. Commissioner*, 77 T.C. 881, 889-91 (1981). In *Zarin v. Commissioner*, 92 T.C. 1084, 1089 (1989), *remanded on other grounds*, 916 F.2d 110 (3d Cir.1990), the Third Circuit found that new matter had been raised when the original notice of deficiency asserted a theory of larceny and the answer to the petition in Tax Court raised a theory of income from discharge of indebtedness. In reaching its conclusion, the *Zarin* Court determined that the latter theory clearly required different evidence from the ground originally asserted in the petition.

The Tax Court specifically addressed a timing issue with respect to "new matters" in *Hunter v. Commissioner*, 44 T.C.M. (CCH) 385, 1982 WL 10676 (1982). In this case, the question was whether the petitioner's stock became worthless during the year in question. Respondent did not raise the issue in his notice of deficiency or in the pleadings of the case. While the petitioner elicited testimony concerning the timing of the worthlessness of the debt during trial, he argued

that the year of the loss was a new matter. The Tax Court agreed with the petitioner and found that a challenge to the ordinary character of a loss does not necessarily encompass a challenge to the fact of the loss. *Hunter*, 1982 WL 10676, at *20. In reaching its conclusion, the Court reasoned that "the issue of the timing of the loss would appear to be conceded, for if the loss was not properly taken in the year before the Court, the issue of the character of the loss becomes moot." *Id.*

This Court finds Taxpayers' argument on this point persuasive. The Notice of Deficiency issued to Taxpayers presumes the existence of a discharge of indebtedness in stating: (1) You are not entitled to increase your basis in the corporation by *the* cancellation of indebtedness income; and (2) If *the* cancellation of debt is excluded at the corporate level, there is no income to flow through to the shareholders.... (emphasis added). Commissioner's challenge to Taxpayers' loss was aimed at the nature or character of the loss, not the year it allegedly occurred. Commissioner's raising of the general existence of the alleged loss does not necessarily implicate a challenge to the timing of the alleged loss.

Furthermore, Commissioner failed to raise specifically the question of the existence or the timing of the income despite having the opportunity to do so and despite advancing other theories for the deficiencies. Such other theories include the following: (1) the exclusion of Section 108 of the Internal Revenue Code applies at the corporate level, therefore, there is no income to flow through to the shareholders; (2) the amount excluded is tax-deferred income, not tax-exempt income; and (2) Taxpayers were not at risk for the 1992 loss pursuant to Section 465 of the Internal Revenue Code.

Therefore, in light of the foregoing, this Court finds that the issue of the timing of the discharge of indebtedness income is a "new matter" for consideration. The assertion, subsequent to the Notice of Deficiency, that New Manchester did not experience a discharge of indebtedness in 1992 as a basis for