**Martin ALPERT, et al., Plaintiffs**

v.

**UNITED STATES of America, Defendant.**

**No. 1:04 CV 383.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 28, 2006.

J. Timothy Bender, Joseph P. Alexander, Rotatori Bender Gragel Stoper Alexander, Cleveland, OH, for Plaintiffs.

Karen A. Smith, David M. Steiner, Nicole M. Bielawski, U.S. Department of Justice, Washington, DC, for Defendant.

*ORDER*

OLIVER, District Judge.

On February 24, 2004, Martin Alpert and Carolyn Alpert (together, "Plaintiffs")

filed this action against the United States of America ("Defendant" or "U.S.") to recover: (1) federal income taxes and interest thereon paid for the taxable year 1991, under 28 U.S.C.A. § 1346(a)(1); and (2) other relief as this court might deem just and appropriate, including attorney's fees under 26 U.S.C. § 7430. Now pending before the court is Defendant's Motion for Summary Judgment (ECF No. 16). For the reasons that follow, Defendant's Motion is granted.

## I. BACKGROUND

Plaintiffs are a married couple who held 100% of the stock in a corporation called Cumulus. (*See* Alpert Aff. ¶ 2, ECF No. 18.) During the years in issue, Cumulus elected to be taxed as an S corporation, under sub-Chapter S of the Internal Revenue Code. (*See Id.* at ¶ 3.) A sub-Chapter S corporation is:

a small corporation that has elected, under the Internal Revenue Code ("IRC"), to be taxed similarly to partnerships. When a corporation has elected to be taxed under Subchapter S, the corporation itself is not subject to income tax. Rather, the income tax is imposed directly on the shareholders on a pro rata basis. In other words, the corporation's income "passes through" to the shareholders, who then report that income on their individual tax returns.

*Friedman v. Commissioner of Internal Revenue,* 216 F.3d 537, 539 (6th Cir.2000) (citing 26 U.S.C. § 1366). Pass-through has been defined as follows:

[U]nder Subchapter S, the Company does not pay corporate-level income taxes. Instead, the Company's income is taxed directly to its shareholders based on their ownership of corporate stock. This type of income is called pass-through income, because it passes through the corporation untaxed and

comes to rest on the individual income tax returns of the owner(s) of the Subchapter S corporation who must then pay individual income tax on the income.

*U.S. v. Fletchall,* 19 F.Supp 2d 932, 938 (N.D.Iowa 1997). Cumulus became insolvent in 1992, and as a result, incurred a loss of over $7.5 million for that year. (*See* Alpert Aff. ¶ 4.) When a corporation becomes insolvent:

there is not enough asset value to satisfy the fixed claims and the number representing shareholder equity becomes negative. That negative number then represents the extent to which the value of the creditors' claims is less than the amount of those claims. Since the liability of shareholders is limited to their investments, anything the managers do to increase or decrease shareholder equity is primarily to the benefit or detriment of the creditors, rather than the shareholders, until the corporation regains solvency.

*In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 653 (Bankr.N.D.Ill.1998).

Plaintiffs maintain that "[p]rior to 1992, Cumulus had borrowed significant sums of money from Star Bank National Association for use in its business operations, which indebtedness was secured by substantially all of the assets of Cumulus." (Alpert Aff. ¶ 5.) Plaintiff continues, "Cumulus defaulted on the repayment of the Star Bank debt, and in December 1992, Star Bank brought an action for the appointment of a receiver to dispose of the assets of Cumulus for satisfaction of the indebtedness." (Alpert Aff. ¶ 6.) As a result, "the Cuyahoga County Court of Common Pleas issued an emergency order in December of 1992 authorizing the appointment of Stephen D. Hobt as receiver." (*Id.*)

On January 7, 1993, an involuntary petition under the Bankruptcy Code was filed against Cumulus by Cumulus' creditors in the United States Bankruptcy Court, Northern District of Ohio. (*See Id.* at ¶ 8, *See* Trustee's Final Report at pg. 2, ECF No. 19 Ex. 1.) Consequently, on January 29, 1993, the bankruptcy court appointed a trustee to administer the debtor's estate. (*See Id.*)

After the state court receiver and bankruptcy trustee were appointed, "the assets of Cumulus were liquidated to satisfy ... substantial indebtedness." (Alpert Aff. ¶ 9.) During this time, the receiver collected less than $2.9 million, "which amount was less than the sum owed to Star Bank." (*Id.* at ¶ 11.) By July 1994, the receiver filed reports providing that he "had collected all inventory, receivables and other assets of Cumulus, and collected no further sums." (*Id.* at ¶ 10.) Moreover, "by the end of 1994, ... the trustee completed the filing of all preferences or other possible recovery claims and had collected approximately $433,000." (*Id.* at ¶ 12.) Additionally, in early 1995, he collected "a little over $25,000 in pending preference claims." (*Id.* at ¶ 13.) Despite the efforts of the trustee and receiver, over $31 million in unsecured debt of Cumulus was never repaid by the end of 1994. (*See Id.* at ¶ 14.)

On July 14, 1995, the trustee filed his final report. (*See* Trustee's Final Report at 1–2, ECF No. 19 Ex. 1.) The final report provided, in part, as follows:

> All property of the estate, except that claimed as exempt by the debtor(s), without objection, or determined by the Court as exempt, has been inventoried, collected and liquidated, or abandoned. Any property not heretofore abandoned by the trustee is now abandoned .... All claims have been examined and objections have been resolved. All applications for approval of compensation and expenses of other professional persons have been filed with the United States Trustee and the Court.

(*Id.* at pg. 2.) Defendant states, and Plaintiffs do not dispute, that on March 25, 1996, the trustee filed his "Zero Bank Statement and Final Account" and the Bankruptcy Court entered its final decree and closed the case. (*See* Def. Brief in Support at 4, ECF No. 17.)

In April of 2000, Plaintiffs jointly filed a Form 1040X claim with the Internal Revenue Services ("IRS") for a personal refund of federal income taxes. (*See* Compl. ¶ 8, ECF No. 1.) The Plaintiffs sought a refund of taxes allegedly overpaid for the taxable year 1991, the tax year before Cumulus became insolvent, in the amount of $389,827. (*See Id.*) The IRS denied Plaintiffs' claim for a refund of overpaid taxes for the taxable year 1991. (*See Id.* at ¶ 9.)

## II.  DISPUTED FACTS

Plaintiffs' position is that the refund amount is a result of discharges of indebtedness by several of its unsecured creditors. (*See Id.* at ¶ 12 & 13.) Plaintiffs state that evidence of the discharges is shown by "information received from the accounting departments of Microsoft and CCA Advertising [that] both companies had written off the debt of Cumulus in the years 1992, 1993 and 1994." (Alpert Aff. ¶ 16, ECF 18.) Plaintiffs further contend that the discharges lead to an increase [1] in

---

**1.** Gross income includes income from discharge of indebtedness, or cancellation of indebtedness (COD income). Cancellation–of–Debt or "COD" is a term that is interchangeable with the term discharge of indebtedness.

This means that a taxpayer who has incurred a financial obligation, which obligation is later discharged or the taxpayer is released from the indebtedness, has realized an accession to income. The rationale of this princi-

the basis [2] of Plaintiffs' stock, but prior to the increase, Plaintiffs had a pass-through loss from Cumulus of at least $4,215,461 that had been suspended. (*See* Compl. ¶ 13 & 14, ECF No. 1.) As a result of the discharges and the increased stock basis, Plaintiffs allege that they were allowed to claim the suspended loss and carry the loss back [3] to 1991. (*See Id.* at ¶ 15.) Therefore, Plaintiffs contend that they have "overpaid their federal income tax for the taxable year 1991 in the amount of at least $389,827, and . . . are entitled to recover from the Defendant this sum together with interest thereon." (*Id.* at ¶ 16.)

The Defendant's position is that Plaintiffs' claim for a refund was properly denied. (*See* Def. Brief at 4–6.) The Defendant asserts that in 1992, Cumulus lost $7.6 million, but that Plaintiffs had only $3.4 million of basis remaining in their Cumulus stock. (*See Id.* at pg. 3.) Hence, the Plaintiffs could only deduct $3.4 million of the losses in 1992. The remaining $4.2 million of losses from 1992, or any subsequent year, were suspended pending any later increase in the basis of Plaintiffs' stock. (*See Id.*) Defendant maintains there is no evidence to support Plaintiffs' claim that any of Cumulus' secured creditors discharged any of its indebtedness for 1992, 1993, or 1994, and thus, Plaintiffs were not entitled to increase their basis in the Cumulus stock. (*See Id.* at 5.) Consequently, without the increase in the basis of Plaintiffs' stock, the Plaintiffs could not write off more of the suspended loss from 1992. (*See Id.* at, fn 2.) Additionally, Plaintiffs would not have enough of a loss

from 1992, to carry back to 1991 and offset the income they received from Cumulus during that year. (*See Id.*)

## III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a*

---

ple is that the discharge of a debt below the face value of the debt accords the debtor an economic benefit equivalent to income. *See,* 216 F.3d at 544–45 (citations omitted).

**2.** Basis has been defined as, "[t]he value assigned to a taxpayer's investment in property and used primarily for computing gain or loss

from a transfer of the property." BLACK's LAW DICTIONARY 145 (7th ed.1999).

**3.** Carryback has been defined as, "[a]n income-tax deduction that cannot be taken entirely in a given period but may be taken in an earlier period; also termed *loss carryback.*" BLACK's LAW DICTIONARY 205 (7th Ed.1999).

*genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e) (emphasis added.) However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standard. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party *fails to make a showing sufficient to establish the existence of an element essential to that party's case* and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (emphasis added). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## IV. LAW AND ANALYSIS

In the instant case, Defendant argues that Cumulus did not have discharge of indebtedness income to pass through to the Plaintiffs for the taxable year 1991. (*See* Def. Brief at 4.) Specifically, Defendant argues that the discharge did not pass through to Plaintiffs until 1996. (*Id.*) It is undisputed that Cumulus had discharge of indebtedness income at some point in time, but the U.S. does not agree that Cumulus had discharge of indebtedness income in 1992, 1993, and/or 1994. (*Id.* at 5.) Defendant's argument is primarily based on the leading Sixth Circuit case relevant to the present issue, *Friedman v. Commissioner of Internal Revenue,* 216 F.3d 537, (6th Cir.2000).

### A. *Friedman v. Commissioner of Internal Revenue*

The facts of *Friedman* are similar to the facts in the present case. The plaintiffs there held stock in an S corporation, called New Manchester, which had debts well in excess of its assets. *See* 216 F.3d at 539. As a result of continued losses, New Manchester's creditors filed an involuntary petition for bankruptcy in 1992. *See Id.* Subsequently, a trustee was appointed by the Bankruptcy Court to administer the

bankrupt estate. *Id.* "The trustee engaged in a number of activities on behalf of New Manchester, including the following: collecting accounts receivables, seeking buyers for saleable assets, paying claims, and filing reports with the bankruptcy court." *Id.* Furthermore, during the time that the trustee administered the New Manchester estate, several of New Manchester's creditors commenced proceedings in the Bankruptcy Court, alleging potential fraudulent conveyances. *See Id.* Eventually, on April 11, 1995, the taxpayers authorized the trustee to settle the combined claims for $2.2 million and the trustee filed its final report on November 30, 1995. *See Id.* Accordingly, the Bankruptcy Court closed the case and discharged the trustee. *Id.* at 540.

After the completion of the bankruptcy proceedings, the plaintiffs in *Friedman* filed joint federal income tax returns with the IRS, in connection with its stock in New Manchester, the S corporation. *See Id.* at 540. The plaintiffs in *Friedman* argued that, "there was a discharge of indebtedness in 1992 because it was clear at the end of 1992 that $19,471,684 of New Manchester's indebtedness would never be repaid." *Id.* at 544. Thus, plaintiffs claimed that they were owed a refund for the taxable years 1989 and 1990. *Id.* The IRS denied that the plaintiffs were owed a refund, arguing that "there was no discharge because there was no identifying event in 1992 demonstrating that a debt had been discharged." *Id.* at 544–45.

In *Friedman*, the Sixth Circuit had to determine whether an insolvent S corporation realized cancellation of debt ("COD") income in 1992, which would entitle its stockholders or taxpayers to an increase in their basis in the S corporation's stock. 216 F.3d at 541. In *Friedman*, the Sixth Circuit reasoned that:

in order for COD income to occur under section 61(a)(12), the taxpayer must have been discharged from a liability. Such liability, or debt, must be viewed as having been discharged when it becomes clear that the debt will never have to be paid. The test for determining such a moment is a practical assessment of the facts and circumstances relating to the likelihood of payment. 'Any 'identifiable event' which fixes the loss with certainty may be taken into consideration.'

*Id.* at 546 (citations omitted). Considering the fact that the trustee was administering the bankruptcy and settling claims against the corporation until 1996 when the bankruptcy proceedings were closed, the Sixth Circuit found that "no identifying event occurred [during the year in question] to fix the date of discharge of indebtedness in that year." *Id.* at 548–49.

The facts in *Friedman* are nearly identical to those in the instant case. Like the plaintiffs in *Friedman*, Plaintiffs held stock in an S corporation that became insolvent, leading to an involuntary bankruptcy proceeding and the appointment of a trustee to administer the corporation's estate. *See Friedman*, 216 F.3d at 539. (*See* Alpert Aff. ¶ 2, 4, 8.) Just as in *Friedman*, the bankruptcy proceedings were pending during 1992, 1993 and 1994, and the trustee and receiver were still actively administering Cumulus' estate, as they were filing reports, attempting to satisfy Cumulus' substantial debt, handling claims against the estate, and collecting inventory, receivables and other assets of Cumulus. *See Id.* (Alpert Aff. ¶ 9, 10, 12, ECF No. 18.) Similarly, as in *Friedman*, once all the claims pertaining to Cumulus had been settled and the bankruptcy case was closed, Plaintiffs filed for a refund as a result of alleged discharges of indebtedness. *See Id.* (*See* Alpert Aff. ¶ 9 & 12, *See* Compl. ¶ 8.) Finally, in both cases, the IRS denied that a refund was owed, arguing that the insolvent corporations did

not realize COD income during the years in question because there was no "identifiable event" to mark such an occurrence, considering the fact that significant actions were still being taken by the administrators of the bankruptcy proceedings. *Friedman*, 216 F.3d at 548–49. (*See* Def. Brief at 4–7.)

In the instant case, Plaintiffs' affidavit provides in part as follows:

16. According to information received from the accounting departments of Microsoft and CCA Advertising, both companies had written off the debt of Cumulus in the years 1992, 1993, and 1994. 17. *To the best of my knowledge and belief,* many of the other unsecured creditors had also written off the Cumulus debt as uncollectible in 1994, 1993, and 1992.

(Alpert Aff. ¶ 16 & 17) (emphasis added). Although the Plaintiffs assert that to the best of their knowledge, Microsoft, CCA Advertising and other unsecured creditors discharged the indebtedness of Cumulus during 1992, 1993, and 1994, this is an inadmissible hearsay statement, not made on personal knowledge. (*See* Alpert Aff. ¶ 16 & 17.) Plaintiffs fail to provide this court with any of the information supposedly received from the accounting departments of Microsoft and CCA Advertising. Additionally, Plaintiffs point to nothing in the record supporting their "belief" that any of Cumulus' other unsecured creditors "had ... written off the Cumulus debt as uncollectible in 1994, 1993, and 1992." (Alpert Aff. ¶ 17.)

As previously stated, summary judgment is appropriate whenever the non-moving party *fails to make a showing sufficient to establish the existence of an element essential to that party's case* and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 (emphasis added). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d at 1479–80 (citing *Frito–Lay, Inc.*, 863 F.2d at 1034). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson*, 801 F.Supp. at 4.

It is essential that Plaintiffs' provide evidence supporting their position that Cumulus' unsecured creditors actually discharged a certain amount of Cumulus' indebtedness before 1996. Plaintiffs' belief that the write-offs occurred in 1992, 1993 and 1994, is insufficient to survive summary judgment. In *Hadley v. Inmon*, 2006 WL 141750 (E.D.Tenn.2006), the Court considered whether statements in an affidavit were based on personal knowledge, as opposed to "statements made on information and belief" in order to survive summary judgment. 2006 WL 141750 at 8. In *Hadley*, the plaintiff attempted to create an issue of material fact to survive summary judgment by relying on a statement in the plaintiff's affidavit, stating that the plaintiff "believed" a fact to be true. The court determined that:

[T]hese statements, however, do not meet the requirements of Rule 56(e) for summary judgment affidavits and do not create an issue of fact .... Rule 56(e) requires that affidavits supporting or opposing summary judgment must include facts based on personal knowledge. '[S]tatements made 'on information and belief' are insufficient to satisfy the personal knowledge requirement of Rule 56(e).' '[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact.'

2006 WL 141750 at 8 (citations omitted). Plaintiffs' belief that Cumulus' unsecured

creditors discharged indebtedness prior to 1996 is insufficient to defeat Defendant's Motion for Summary Judgment. A mere belief does not create a genuine issue of fact about the existence of that certain fact. Plaintiffs have not provided evidence in the record from which a reasonable jury could conclude that the discharge of indebtedness occurred sometime in 1992, 1993 and 1994.

Defendant has shown that the bankruptcy trustee and receiver were still administering Cumulus' estate until the proceedings were concluded in 1996, when the trustee filed his Zero Bank Statement and Final Account, and the Bankruptcy Court entered its final decree closing the case. As no identifiable event fixes the amount of discharge of indebtedness in this case prior to the conclusion of the bankruptcy proceedings in 1996, Plaintiffs did not realize any discharge of indebtedness income prior to 1996. Accordingly, Plaintiffs were not entitled to increase their basis in Cumulus' stock, and without an increase in their basis, Plaintiffs could not write-off more of the suspended loss from 1992. As such, Defendant's Motion for Summary Judgment is granted.

## V. CONCLUSION

The court finds there is no genuine issue of material fact in this case and that judgment should be entered as a matter of law. There is no evidence in the record supporting the conclusion that there was an identifiable event that fixed a discharge of indebtedness by debtors of Cumulus as occurring in 1992, 1993 and 1994. Therefore, Defendant's Motion for Summary Judgment (ECF No. 16) is granted.

IT IS SO ORDERED.